HUGH L. SMITH and LOIS J. SMITH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE
Smith v. Commissioner
Docket Nos. 17336-79 and 17337-79.
United States Tax Court
T.C. Memo 1980-410; 1980 Tax Ct. Memo LEXIS 167; 40 T.C.M. (CCH) 1315; T.C.M. (RIA) 80410; September 22, 1980, Filed Larry N. Johnson and Ruth E. Salek, for respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: These cases were assigned to Special Trial Judge Randolph F. Caldwell, Jr., for hearing and disposition of respondent's motions for judgment on the pleadings. The Court agrees with and adopts the Special Trial Judge's opinion, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE CALDWELL, Special Trial Judge: These cases are before the Court on respondent's motion in each case for judgment on the pleadings, filed on July 9, 1980. Respondent appeared by his counsel at the hearing on August 27, 1980, but there was no appearance by or on behalf of petitioners nor had they filed any response to respondent's motions. At the conclusion of the hearing *168 the motions were taken under advisement. In the statutory notices of deficiency, upon which these cases are based, respondent determined deficiencies and additions tax for fraud under section 6653(b) of the Internal Revenue Code of 1954[1], as follows: Docket No. 17336-79
Addition to Tax
Year
Deficiency
section 6653(b)
1971
$4,296
$2,148
Docket No. 17337-79
Addition to Tax
Year
Deficiency
6651(a)
6652(a)
6653(b)
1972
$4,514
$2,257
1973
6,359
3,399
1974
5,818
($150)
($121)
3,716
Petitioners timely filed their petitions, and respondent thereafter filed his answer to the petition in each case. In paragraph 7 of the answer at Docket No. 17336-79 and in paragraphs 7 and 8 of the answer at Docket No. 17337-79, respondent alleged the facts on which he relied to support his determinations of additions to tax for fraud. Petitioners did not file a reply to respondent's answer in either of the cases, and on May 5, 1980, respondent filed a motion in each case *169 under Rule 37(c) of this Court's Rules of Practice and Procedure, for an order that the undenied allegations in the answer be deemed to be admitted. Those motions were set for hearing on June 4, 1980, and were granted by orders dated June 4, 1980. The result is that the affirmative allegations in each answer, as mentioned above, are now deemed to be admitted. Rule 37(c). The following findings of fact are based upon the allegations in each answer which are deemed to be admitted. FINDINGS OF FACT During the years 1971 through 1974, petitioner Hugh L. Smith (hereinafter "Smith") operated a refuse collection business, under the name of Community Disposal Service, Inc. (hereinafter "Disposal"). Disposal was incorporated by Smith in 1963, and during the taxable years 1971 through 1974, Smith was the corporate president and sole shareholder. Disposal's principal place of business at which its books and records were maintained was Hand Road, Chaffee, New York. Said books and records were maintained, and the corporation's income tax returns for the years here involved, were filed on the cash method of accounting. Petitioners filed a joint Federal income tax return for 1971, *170 at a date not shown by the record. For 1972, they filed such a return on October 24, 1973. Petitioners filed such a return for each of the years 1973 and 1974 on September 13, 1978, subsequent to the institution of an investigation by the Criminal Investigation Division of the Internal Revenue Service. Petitioners filed an amended return for the year 1974 on October 6, 1978. During each of the years 1971 through 1974, Disposal maintained a contract for the removal of refuse from the Gowanda State Hospital (hereinafter "the Hospital"). For the performance of this service, Disposal received the following amounts for the years indicated: Year
Amount
1971
$19,610
1972
23,949
1973
23,868
1974
26,191
None of the foregoing amounts was recorded in Disposal's books of amount and records. Throughout the years 1971 through 1974, Smith diverted funds received by Disposal for his personal use. Disposal's method of reporting income required all corporate receipts to be deposited to the corporate checking account. In fact, Smith received for personal use all of the corporate receipts from the Hospital for Disposal's fiscal year ended June 30, 1971. The 1971 *171 payments were either cashed by Smith or deposited in petitioners' personal bank accounts. Smith did not deposit in the corporate checking account the payments from the Hospital for services rendered by Disposal during its fiscal years ended June 30, 1972 through 1974. Smith deposited said payments from the Hospital in his personal bank account. Petitioners failed to report any of the Hospital payments on their individual income tax returns for the years 1971 through 1974. During an independent certified audit of Disposal, Smith denied knowledge of Disposal's contract with the Hospital until the accountant produced the contract, even though Smith had personally negotiated the payments received by Disposal from the Hospital for at least three years prior to said audit. When the accounting firm which performed the certified audit suggested that Smith amend his returns, the firm's services were terminated. Smith told Internal Revenue Service agents that he had informed his accountants that he deposited corporate receipts in his personal accounts. In fact, said accountants were not so informed. Smith told a former employee that the funds received from the Hospital were his personal *172 "sock money." Smith stated during the investigation that petitioner's failure to file income tax returns for the years 1973 and 1974 was due to their accountant's failure to prepare such returns. In fact, said accountants made numerous requests for the information needed to file said returns, but Smith failed to honor their requests. As found above, petitioners tardily filed a return for each of those years on September 13, 1978. Smith admitted to the specific 1972-1974 omissions and dispositions of the same in an interview conducted by Internal Revenue Service agents on July 21, 1976. In their late filed returns for 1973 and 1974, petitioners declared as income the payments from the Hospital received in those years. In his statutory notices of deficiency respondent attributed to petitioners the above listed Hospital payments for the year in which each payment was diverted by Smith. In addition, for 1973 and 1974, respondent attributed to petitioners the following specific items of income diverted from Disposal. Source
Date
Amount
U.S. Fidelity & Guaranty
1973
(insurance proceeds)
9-15
$3,943.95
Merchant Mutual Ins.
(insurance proceeds)
10-3
800.00
1974
Lee Joyce & Son
10-17
96.00
Schlitz's Delicatessen
10-17
58.00
James R. Shaw
10-17
96.00
Mike Turner Lumber
11-15
2,392.00
*173 The foregoing amounts were either cashed by Smith or deposited in petitioners' personal bank accounts. Smith is the same person who was the defendant in the criminal case of United States v. Hugh L. Smith, in the United States District Court for the Western District of New York, Docket No. 79-22 (1979). The respondent herein is a party in privity with the United States of America, the prosecuting party in the aforesaid case. In that case, Smith was indicted on six courts of income tax evasion, in violation of section 7201. Said counts related to Smith's personal income tax returns for the taxable years 1972, 1973, and 1974, as well as the corporate income tax returns of Disposal for its fiscal years ended June 30, 1972 through 1974. The District Court accepted Smith's quilty plea to Count I of the indictment upon being satisfied that there was adequately factual basis that petitioner did willfully attempt to evade and defeat part of his income tax for the taxable year 1972, and was therefore guilty as charged. Petitioner was convicted on his guilty plea and the judgment is final. One of the issues in the instant case is whether the addition to tax under section *174 6653(b) should be imposed against Smith for the taxable year 1972. Said issue in the instant case is the same as the issue which was presented and determined adversely to the defendant Smith in the criminal case to the extent that a conviction on Count I in the indictment is dependent upon a finding that Smith did willfully attempt to evade or defeat part of his income tax. The prior criminal conviction of Smith under section 7201 for the taxable year 1972 is conclusive and binding upon him. By reason thereof, Smith is estopped in the instant case under the doctrine of collateral estoppel (estoppel by judgment) from denying herein that he did willfully attempt to evade or defeat his Federal income tax liability for the taxable year 1972 and that he knew and believed that the items described in Count I of the indictment, and which are the basis for the allegations of fraud in paragraphs 7(a)-(s) of respondent's answer at Docket No. 17337-79, were reportable as taxable income in 1972. OPINION Respondent in his motions for judgment on the pleadings under Rule 120 asks that this Court "enter a decision for the respondent on the pleadings to the effect that a part of the underpayments *175 of income tax required to be shown on petitioners' returns for each of the taxable years [1971,] 1972, 1973, and 1974 is due to fraud." Rule 120(b) states: (b) Matters Outside Pleadings: If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and shall be disposed of as provided in Rule 121 * * *. Inasmuch as it has been necessary to resort to respondent's Rule 37(c) motions, the notices of hearing thereon, and the Court's orders entered with respect to those motions, it is believed that respondent's motions for judgment on the pleadings should be treated as motions for partial summary judgment under Rule 121. That will be done. Section 6653(b) provides for the imposition of a 50 percent addition to tax if any part of any underpayment of tax required to be shown on the return is due to fraud. Up to this point, the Court has not determined, nor has it been asked to determine, the precise amount of the underpayment by petitioners for any of the years involved, and therefore it will not be able to determine the precise amount of the addition to tax *176 for any such year, since the amount of the addition is inextricably tied in with the amount of the underpayment. However, propriety of additions to tax for fraud is dependent upon whether petitioner harbored an intent to evade a tax believed to be owing. That issue, it is believed, is one which is appropriate for a partial summary adjudication under Rule 121, even in the absence of the usual prior determination of the precise amount of the underpayment of tax. Respondent bears the burden of proving fraud with intent to evade tax, and that burden is to be carried by clear and convincing evidence. Rule 142(b). In most cases, such burden is met by respondent at trial where the facts are established by testimony of witnesses and the introduction of documentary evidence. However, in a number of cases the necessary facts have been established through the pleadings of the parties, motions filed, and orders entered with respect thereto. In the present case material allegations in the answers with respect to fraud have been deemed to be admitted by the petitioners in the Court's order of June 4, 1980. Accordingly, the respondent's burden of going forward to prove such facts in those *177 allegations has been discharged. Black v. Commissioner, 19 T.C. 474 (1952); Morris v. Commissioner, 30 T.C. 928 (1958); Gilday v. Commissioner, 62 T.C. 260 (1974); and Marcus v. Commissioner, 70 T.C. 562 (1978). Accordingly, the question presented is whether those facts clearly and convincingly show that a part, if not all, of any underpayments of tax is due to fraud with intent to evade tax. The findings of fact clearly and convincingly establish fraud with intent to evade tax. For the year 1972 fraud is conclusively established by Smith's prior conviction under section 7201 for that year. Arctic Ice Cream Co. v. Commissioner, 43 T.C. 68 (1964). As to the remaining years -- 1971, 1973, and 1974 -- there are numerous badges of fraud: the diversion of funds to Smith from his wholly-owned corporation, Disposal, emanating from the Hospital's payments for Disposal's refuse collection service, the proceeds being either taken by Smith in cash or deposited in petitioners' personal bank account; petitioners' failure to report any of such diversions on their returns, petitioners' acceptance for their *178 personal use two insurance proceeds checks in 1973, totaling $4,743.95 and payments for services rendered by Disposal from four small businesses in 1974, totaling $2,642, which they did not report on their individual income tax returns; petitioners' receipt, and their failure to report for tax purposes, of rents and interest income in 1973 and 1974; Smith's efforts to conceal from Disposal's accountants the diversions emanating from the Hospital payments; lying to respondent's agents during the course of their investigations; Smith's statements to a former employee that such payments were his personal "sock money" -- all of which resulted in what appears at this juncture to have to have been consistent and sizeable understatements of taxable income and tax liability on petitioners' returns over a four-year period. In light of such numerous badges of fraud, there is no doubt that whatever underpayments of tax are ultimately determined by this Court are due to fraud with intent to evade tax on petitioners' part. It appearing that there is no genuine issue of material fact and that the respondent is entitled to prevail on the issue presented for partial summary adjudication, an order *179 will be entered granting respondent's motions for partial summary judgment that petitioners are liable for additions to tax for fraud under section 6653(b) for each of the years 1971 through 1974. The cases will remain on the docket for decision of the issue of the precise amount of the underpayment for each of the years. Decision of that issue will control the amount of the addition to tax for fraud for each such year. An appropriate order will be issued. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩